IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-97-0355 |
| JERRY ANTONIO WILLIAMS, | * | |
| Defendant. | * | |
| | * | |

\*\*\*

# MEMORANDUM OPINION

Pending before the Court is Defendant Jerry Williams' pro se Motion for Compassionate release pursuant to 18 U.S.C. § 3582(c) (ECF No. 513), Supplemental Motion for Compassionate Release (ECF No. 570), and Motion to Appoint Counsel (ECF No. 503).[1] The Motions are fully briefed, and no hearing is necessary. See Local Rules 105.6, 207 (D.Md. 2023). For the reasons set forth below, Williams' Motions will be denied.

---

[1] It is well settled that "a criminal defendant has no right to counsel beyond his first appeal." United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000) (quoting Coleman v. Thompson, 501 U.S. 722, 756 (1991)). "The right to appointed counsel extends to the first appeal of right, and no further." United States v. Cromartie, No. JKB-11-0426, 2021 WL 2018635, at *1 (D.Md. 2021); see Pennsylvania v. Finely, 481 U.S. 551, 555 (1987) (holding that there is no constitutional right to appointed counsel in post-conviction proceedings); see also United States v. Reed, 482 F.App'x 785, 786 (4th Cir. 2012). "Though in some exceptional cases due process does mandate the appointment of counsel for certain postconviction proceedings," Legree, 205 F.3d at 830, Williams' Motion for Compassionate Release does not fall within this category. "A motion pursuant to § 3582(c) 'is not a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution.'" Id. (quoting United States v. Tidwell, 178 F.3d 946, 949 (7th Cir. 1999)). Accordingly, the Motion to Appoint Counsel will be denied.

## I. BACKGROUND

Williams was indicted in two separate criminal actions: GLR-96-458 ("Williams I"), and the present case, GLR-97-355 ("Williams 2"). (Mot. Compassionate Release ["Mot."] at 2, ECF No. 513). Williams was a supervising lieutenant in a drug trafficking organization run by Anthony Jones ("Jones"), where they both worked to distribute an estimated 50-150 kilograms of cocaine a year. (Resp. Opp'n Mot. Compassionate Release ["Opp'n"] at 2, ECF No. 519). In the instant case, Williams 2, Williams was charged with murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) for recruiting two seventeen-year-olds to carry out the murder of John Edwards Jones on February 26, 1997. He was found guilty on December 14, 1998. (Id. at 1).

On December 22, 1997, Williams was convicted on numerous counts in Williams I: (1) Count One for conspiracy to murder and kidnap in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) for murdering Derrick Rivers after intending to murder Elway Williams; (2) Count Five for conspiracy to retaliate against a federal witness in violation of 18 U.S.C. § 1513(a) for arranging the shooting of Angelo Carter; and (3) Count Six for conspiracy to distribute heroin and cocaine in violation of 21 U.S.C. § 846. (Id.; Mot. at 2). There was also evidence presented that Williams killed Jermaine Crooks and participated in the attempted murder of Keith Westmoreland. (Opp'n at 3).

Williams was originally sentenced to life imprisonment to run concurrent to 120 months for Count One, sixty months for Count Five, and life imprisonment to run concurrent to the other counts for Count Six. (Id. at 2). On April 1, 1998, Williams appealed to the United States Court of Appeals for the Fourth Circuit to dismiss case the Williams I

indictment. (Mot. at 2). On December 7, 2001, the Fourth Circuit dismissed the judgment in part, vacated the sentence of Williams, and remanded the case to the District Court for resentencing. Williams was resentenced to: (1) 120 months for Count 1; (2) sixty months to run concurrently to Count One; and (3) 240 months to run consecutive to Count One but concurrent to the sentence being served in 97-355. (Opp'n at 2). Thus, Williams is currently serving a thirty-year sentence for Williams I, and a life sentence for this case, Williams II. (Id.).

In the instant case, Williams II, Williams filed a Motion to Dismiss Indictment Due to Double Jeopardy. (ECF No. 29). The Court denied the Motion, (ECF No. 47), and Williams appealed to the Fourth Circuit. (ECF No. 48). The court affirmed the District Court's denial. (ECF No. 113). On January 4, 1999, Williams appealed the District Court's judgment, which the Fourth Circuit affirmed on August 24, 2001. (ECF No. 225).

On November 22, 2002, Williams filed a Motion to Vacate under 28 U.S.C. § 2255, (ECF No. 247), and it was, again, denied on January 13, 2004, (ECF No. 282). Although Williams filed an appeal regarding the Motion to Vacate, the Fourth Circuit denied the certificate of appealability and dismissed the appeal. (ECF No. 305).

On June 30, 2021, Williams filed the instant Motion for Compassionate Release. (ECF No. 513). On August 2, 2021, the Government filed their Opposition. (ECF No. 519).[2] On August 23, 2021, Williams filed a Supplement to Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A) and the First Step

---

[2] The Government filed their Opposition along with a Motion to Seal (ECF No. 518), which shall be granted.

Act of 2018. (ECF No. 524). On December 20, 2021, Williams submitted a Reply to the Government's Opposition. (ECF No. 535). Williams then supplemented his previously-filed pro se request for compassionate release with a Supplemental Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(C)(1)(A)(1). (ECF No. 570). The Government opposed the Supplemental Motion, (ECF No. 575), and Williams filed a Reply. (ECF No. 576).

## II. STANDARD OF REVIEW

As a general rule, a district court "may not modify a term of imprisonment once it has been imposed," unless specified exceptions apply. United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)). However, under 18 U.S.C. § 3582(c)(1)(A), also known as the compassionate release provision, a court may modify a term of imprisonment. See also United States v. Maycock, No. 14-cv-0133, 2020 WL 2395620, at *1 (May 12, 2020). The First Step Act of 2018 amended and further expanded the compassionate release provision, allowing federal inmates to file motions for sentence reductions without having to rely on The Bureau of Prisons ("BOP") to initiate any motion for compassionate release. See United States v. Gregory, 538 F.Supp.3d 562, 565–66 (D.Md. 2021).

Before moving for compassionate release, the defendant must either exhaust all administrative remedies or wait thirty days "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582 (c)(1)(A). The Court must then determine if the defendant demonstrated "extraordinary and compelling reasons" supporting relief to be eligible for a sentence reduction. United States v. Bethea, 54 F.4th

826, 831 (4th Cir. 2022). Lastly, the Court "must [] find that release is appropriate under 18 U.S.C. § 3553(a) sentencing factors, to the extent those factors are applicable," Id. at 831, as well as whether reduction is "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582 (c)(1)(A); Gregory, 538 F.Supp.3d at 566. The Court has discretion to grant or deny a motion for compassionate release based on circumstances involving "illness, declining health, age, exceptional family circumstances, as well as 'other reasons.'" United States v. Williams, No. ELH-19-0286, 2023 WL 4490325, at *7 (D.Md. July 11, 2023) (citing U.S.S.G. § 1B1.13). The other factors include whether the defendant is a danger to the safety of any other person or to the community pursuant to 18 U.S.C. § 3142(g).

### III. DISCUSSION

**A.  Administrative Exhaustion**

On December 23, 2020, Williams submitted a Request for Reduction in Sentence. (Suppl. Mot. for Compassionate Release ["Suppl. Mot."] at 2, ECF No. 570). On January 7, 2021, Williams received a denial of the request. (Id.). Four days later, Williams appealed. (Id.). On January 26, 2021, the appeal was, again, denied. (Id.). Thus, Williams appropriately filed for a motion for compassionate release because he has exhausted all administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A).

**B.  Extraordinary and Compelling Reasons**

Under United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13, the court may reduce a term of imprisonment after considering the § 3553(a) factors when: "(1) [there are] extraordinary and compelling reasons [that] warrant [a reduction of defendant's

sentence]; (2) the defendant is at least [seventy] years old [] and has served at least [thirty] years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned; (3) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (4) the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13(a). The Guidelines "are not directly applicable to defendant-filed motions" under § 3582(c). United States v. Jenkins, 22 F.4th 162, 169 (4th Cir. 2021). However, "the [C]ourt may consider these guidelines in defining what should be considered an 'extraordinary and compelling circumstance' warranting a sentence reduction." Id. (citing U.S.S.G. § 1B1.13); see also High, 997 F.3d at 187.

Only the first factor is at issue here. Williams argues that his susceptibility to the Coronavirus ("COVID-19"), due to his hypertension, obesity, and prediabetes, places him at increased risk and warrants a sentence reduction. (Mot. at 4). When determining whether a defendant meets the requirement of showing extraordinary and compelling circumstances, the Court looks to certain factors, including medical conditions of the defendant, age of defendant, family circumstances, and "other reasons." § 1B1.13 Application Note 1.

"[T]he COVID-19 pandemic has been described as the worst public health crisis that the world has experienced since 1918." Williams, 2023 WL 4490325, at * 10. Due to the lack of safety products, difficulty of social distancing, and risk of spreading infection quickly, prisoners are especially vulnerable to COVID-19 outbreaks. Coreas v. Bounds, 451 F.Supp.3d 407, 428 (D.Md. 2020). The Center for Disease Control and Prevention

("CDC") has identified specific risk factors that may increase an individual's chances of severe illness due to COVID-19, including diabetes, obesity, and "possibly hypertension." COVID-19: People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 11, 2023). The Fourth Circuit ruled that a court may consider the CDC's guidelines in the context of a motion for compassionate release, and "the inquiry should consider whether the underlying condition places the inmate at an increased risk of severe illness from COVID-19." Bethea, 54 F.4th at 832.

Williams argues that his medical conditions "put him at increased risk of severe complications from COVID-19 infection." (Suppl. Mot. at 4). He has been diagnosed with obesity, hypertension, and prediabetes. (Id.). Specifically, prediabetes means that his condition has not yet progressed to diabetes, but he is at greater risk for diabetes. (Id.). Medical Records supplied by Defendants show that on November 23, 2020, Williams tested positive for COVID-19 and was placed in quarantine with symptoms of fatigue and loss of taste or smell, shortness of breath, body aches, sore throat, diarrhea, headache, nausea, or vomiting. (Med. Rs. at 26, ECF No. 572-3). By December 2, 2020, Williams' "symptoms ha[d] resolved," and he was "doing well without complaints." (Id.). On December 3, 2020, a health provider checked Williams, where they found that Williams had normal temperatures and pulse oxygenations and had been asymptomatic for the last 10 days. (Id. at 24). In April 2021, Williams completed all doses of the Pfizer vaccine. (Id. at 65). On June 6, 2021, Williams was approved to be transferred because both facilities had "less than 2%" COVID-19 positive inmates (19 inmates)." (Id. at 12). At Atwater USP, where Williams is

now imprisoned, BOP reports that there are zero inmates and zero staff members currently testing positive for COVID-19, and there have been no inmate deaths. See BOP COVID-19 Statistics, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed October 17, 2023).

The CDC states that individuals who have hypertension, obesity, and high risks of developing diabetes may present challenges after contracting COVID-19, and this Court has found extraordinary and compelling circumstances where defendants have multiple chronic medical conditions. See e.g., United States v. Azianbidji, PWG-17-00253, 2021 WL 307416, at *1 (D.Md. Jan. 29, 2021); United States v. White, No. CCB-09-369, 2020 WL 3960830, at *3 (D.Md. Jul. 10, 2020). Yet, this Court specifically decided that hypertension and high BMI were not sufficient to warrant a prisoner's release when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus. See United States v. Taylor, No. PWG-17-0268, 2020 WL 6322620 (D.Md. Oct. 28, 2020). This case is analogous to that of United States v. Taylor for the following reasons. Williams did not suffer any complications after testing positive for COVID-19 in November, had minimal symptoms during his isolation, and recovered with no side effects thereafter. (Med. Rs. at 24−26). Furthermore, the medical providers at the prison have continuously provided tests to monitor his medical conditions, and he was advised to "alert staff immediately" if his condition changes or worsened in any way. (Id. at 26). The most recent BOP data shows that the prison where Williams resides has COVID-19 in complete control, and 752 inmates, including him, have received the COVID-19 vaccine, which lessens the risk of infection and

future complications. See BOP COVID-19 Statistics, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed October 20, 2023). Williams also has not yet been diagnosed with Type II diabetes. (Suppl. Mot. at 4). Although there may be "inherent stressors from incarceration," (id. at 8), his health provider has been noting the risks, and there are no imminent risks that prediabetes or the effect of COVID-19 on prediabetes have in present day. (Med. Rs. at 39). There are unique risks that arise from a non-curable disease like COVID-19, but this Court finds that Williams does not meet the burden of the extraordinary and compelling circumstances threshold.

## C. Section 3553(a) Factors

Even if the Court were to find that Williams satisfied the extraordinary and compelling circumstances prong under § 3582, he is not entitled to compassionate release and sentence reduction based on 18 U.S.C. § 3553(a) factors. "[I]f a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction." High, 997 F.3d at 186. Rather, the court must consider § 3553(a) factors, "to the extent they are applicable," and exercise its discretion before deciding to reduce a defendant's sentence based on "extraordinary and compelling reasons." Id. (citing 18 U.S.C. § 3582 (c)(1)(A)); United States v. Mangarella, 57 F.4th 197, 200–03 (4th Cir. 2023). The factors the Court may consider include:

> (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, protect the public, and provide rehabilitative services; (4) the Guideline sentence; and (5) the need to avoid unwarranted sentencing disparities among similarly-situated defendants.

18 U.S.C. § 3553(a).

As to the first factor, the nature and circumstances of Williams' offense were severe. Williams argues that he suffered from a "lack of strong and safe parental support" in a violent environment and that his brain was underdeveloped. (Suppl. Mot. at 16–17). Williams additionally states that he matured and rehabilitated during incarceration with "substantial progress in the areas of work, education, family relations, and overall positive adjustment." (Mot. at 16). The Court notes this progress, the character statements, (Character Letters, ECF No. 535-3), and Williams' rehabilitation efforts. (Suppl. Mot. at 19, 20–22). However, this does not excuse the fact that Williams was convicted of planning and executing a plot commit murder at the legal adult age of twenty one years old, and recruiting two seventeen-year-olds to that end. (Opp'n at 2–3). His crime was severe and not only put the victim, victim's family, and the minors in danger, but also his community.

Second, Williams has a significant criminal history of committing serious crimes. As stated above, Williams was not only charged with murder in aid of racketeering in this case, but also found guilty of three separate counts in a related but separate case. (Mot. at 2). Williams had been deeply involved in Jones's drug trafficking organization for several years and continuously participated in criminal behavior. (Id. at 20–21). Williams also has multiple prior convictions, including possession of a handgun and conspiracy to distribute cocaine. (Suppl. Mot. at 9). Prior to these two cases, Williams had also participated in the murders of Jermaine Crooks and Derrick Rivers as well as the attempted murder of Keith Westmoreland. (Government's Resp. Opp'n Suppl. Mot. ["Resp. Suppl. Mot."] at 5, ECF

No. 575). In addition, Williams sustained this behavior while incarcerated. (BOP Inmate Disciplinary Data, ECF No. 572-17). He committed many infractions, including but not limited to possessing dangerous weapons and tools, (Id. at 1, 6, 9), engaging in "high[ly] disruptive conduct," (id. at 1, 3), "fighting with another person," (id. at 2), assaulting inmates, (id. at 7–8), and refusing to obey orders, (id. at 1–2, 7–9). Although Williams was penalized for these actions, he continued these unruly behaviors over the course of his incarceration.

As to the third factor, the sentence is necessary to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, protect the public, and provide rehabilitative services. As discussed above, the sentence reflects the seriousness of the offense. The Court must also prioritize the public's safety and place significant weight on William' previous and ongoing dangerous behaviors. Given the severity of the nature and circumstances of Williams' offenses, his history of recommitting crimes, and the fact that he is receiving adequate psychiatric, educational/vocational, and rehabilitative care while incarcerated, Williams' release would not promote respect for the law, and profound concerns to the community's safety would remain if Williams were released.

Fourth, the guidelines range supports the current sentence. The Post-Sentencing Report states that Williams, due to his previous offenses and the seriousness of the crime, was placed in a high enough category to warrant life imprisonment. (Sentence Computation, ECF No. 572-1). Specifically, Williams' "base offense level was [forty-three], criminal history category IV, which established his guideline range as life." (Opp'n at 12).

Lastly, Williams argues that he has endured sentencing disparities compared to the sentences of his co-defendants. (Mot. at 18–19). His co-defendants were all resentenced to shorter terms, despite all being closely associated with the murder of John Jones. (Opp'n at 11–12). This court allows for a defendant to challenge a sentence when a "co-conspirator was sentenced differently." United States v. Goff, 907 F.2d 1441, 1446–47 (4th Cir. 1990). Here, Williams' sentence was appropriate and not disproportionate to those of his co-defendants. While Williams was a legal adult, his co-defendants were minors, (Opp'n at 11), and courts must "consider mitigating circumstances before imposing the harshest possible penalty for juveniles." Miller v. Alabama, 567 U.S. 460, 489 (2012). Although Williams was "21 years old when he committed the crime for the life sentence . . . and much younger when he was first recruited into the organization of the drug-dealing business," he made the decision to commit several of the highest crimes not as a juvenile, but as a legal adult. (Suppl. Mot. at 16).

Williams also argues that his life sentence should be reduced because "after the Fair Sentencing Act [was passed], the conviction under conspiracy to commit murder or kidnapping mandate[s] a statutory maximum of ten years" pursuant to 18 U.S.C. § 1959(a)(5). (Mot. at 19). However, Williams violated 18 U.S.C. § 1959(a)(1) in this case, not 18 U.S.C. § 1959(a)(5), and the maximum penalty for that conviction is life. Thus, the sentence will not be reduced.

## IV. CONCLUSION

For the foregoing reasons, Williams' Motion to Appoint Counsel (ECF No. 503), Motion for Compassionate Release (ECF No. 513), and his Supplemental Motion for

Compassionate Release (ECF No. 570) are denied. The Government's Motion to Seal (ECF No. 518) will be granted. A separate order follows.

Entered this 20th day of November, 2023.

                                                  /s/
                                     George L. Russell, III
                                     United States District Judge